**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-51111

ROBERT LEE BECK, MD, DMD,

Plaintiff-Appellant,

versus

TEXAS STATE BOARD OF DENTAL EXAMINERS; ET AL,

Defendants,

MICHAEL PITCOCK; WILLIAM S. NAIL;
WILLIAM J. KEMP, DR; BRIAN BABIN, DR;
JACK L. BOLTON, DR; RANDOLPH D MINATRA, DR;
FRANK SANTOS, DR; TERRY R. DICKINSON, DR;
ROGER BYRNE, DR; CHARLES T. KU, DR;
RONALD H SHAMBLIN, DR,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
March 3, 2000

Before WIENER and STEWART, Circuit Judges[*].

CARL E. STEWART, Circuit Judge:

This case involves a suit filed by a dental practitioner in the state of Texas against a state regulatory board and its members and staff. The plaintiff claims that the defendants improperly initiated disciplinary proceedings against him and revoked his dentistry license in an effort to retaliate against him from joining in a previous lawsuit filed by a group of dentists against the defendants. For

---

[*] Senior District Judge John M. Shaw of the Western District of Louisiana, was a member of the panel that heard oral argument on this case, but because of his death on December 24, 1999, he did not participate in this decision. This case is being decided by a quorum pursuant to 28 U.S.C. §46(d).

the reasons stated below, we find that the board and its members are immune from liability under absolute immunity, and the board investigator Michael Pitcock is immune from liability under qualified immunity.

FACTUAL AND PROCEDURAL HISTORY

Robert Lee Beck ("Beck") has been a dental practitioner in Texas since 1967. In 1980, Beck joined with other dentists in a lawsuit against the Texas State Board of Dental Examiners (the "Board") contesting the Board's regulations against dentists advertising their services. The Board was composed of nine licensed dentists appointed by the Governor of Texas and was supported by several staff personnel. The Board was responsible for promulgating rules and regulating the dentistry profession in Texas. The lawsuit challenging the Board's regulations against advertising was resolved in favor of the plaintiffs.

In July 1986, Michael Pitcock ("Pitcock") and Wayne Youngblood ("Youngblood"), both staff members and investigators for the Board, accompanied Frank Perez, a Department of Public Safety ("DPS") agent, on an inspection of Beck's dental office. Pitcock stated in his deposition that information was forwarded to him alleging that Beck had ordered unusually high volumes of controlled substances. During the inspection, Beck was asked to produce documentation regarding his orders and prescriptions for controlled substances. The inspection revealed, inter alia, an unaccounted for shortage of certain controlled substances. The officers also discovered that Beck had self-prescribed drugs. Beck also failed to make available the necessary records for inspection. Based on these findings, a formal complaint was filed to revoke Beck's license.[1]

In 1987, the Board held a hearing to determine whether Beck's license should be revoked. Beck failed to attend the hearing. A plea of "untrue" was entered on Beck's behalf, and the Board conducted the hearing. After the presentation of evidence, the Board members unanimously voted to revoke Beck's license.

---

[1] The complaint also alleged that Beck held a fellow dentist at gunpoint and orally threatened another fellow dentist.

2

After the Board's final order to revoke Beck's license was issued, Beck filed an action in state district court to contest the Board's ruling. While Beck's challenge to the Board's order was pending before state district court, the Board and Beck entered into an Agreed Judgment in April 1992. The Board agreed to conditionally reinstate Beck's license if he agreed to satisfy certain conditions. Beck satisfied the conditions and his license was reinstated.

Beck maintains that in 1992, Youngblood testified at a Sunset Committee that the Board targeted certain dentists for selective prosecution because of their participation in the lawsuit challenging the Board's regulations against advertising. Based on this information, Beck claims that the investigation of his dental practice and the disciplinary proceedings which led to the revocation of his license were based on improper retaliatory motivations.

In April 1994, Beck sued the Board, its members, and staff personnel (the "defendants") in their individual and official capacities in federal district court claiming violations of 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organization Act ("RICO"), the Fourth Amendment of the United States Constitution, the Commerce Clause, and the Texas State Constitution. The defendants moved for summary judgment. The district court issued a mixed ruling in which it denied in part and granted in part the defendants' motion for summary judgment. The district court dismissed all of Beck's claims against the Board and the individual defendants in their official capacities. The district court also dismissed Beck's claims against several individual defendants named in his complaint, but preserved his claims against the remaining individual defendants named in the instant appeal. Beck moved to file a second amended complaint, moved for relief from judgment, and moved to correct summary judgment. The district court denied Beck's motions. The remaining defendants filed a second motion for summary judgment to dispose of Beck's remaining claims. The district court granted the motion based on absolute immunity. Beck now appeals the district court's grant of the defendants' second motion for summary judgment. He also appeals the court's denial of his post-judgment motions.

STANDARD OF REVIEW

3

We review de novo, a district court's grant of summary judgment, applying the same standard as the district court in the first instance. See Burge v. Parish of St. Tammany, 157 F.3d 452, 465 (5th Cir. 1999). Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." FED R.CIV.P. 50(c). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden. Celotex v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its summary judgment burden, the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, this showing requires more than some metaphysical doubt as to the material facts. Matsushito Elec. Indus. Co v. Zenith Radio Corp., 475 U.S. 574, 584-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## DISCUSSION

Beck argues that the district court erred when it granted summary judgment to the Board members and the Board's staff member, Pitcock. Specifically, Beck argues that the Board members are not entitled to absolute immunity because the Board members failed to demonstrate that they performed a quasi-judicial function when they initiated disciplinary proceedings to revoke his license. Beck also contends that Pitcock in his role as an investigator is not entitled to absolute immunity.

I.     Board members

Beck argues that the record is insufficient to support the Board members' claim that they performed a "quasi-judicial" function regarding the disciplinary proceedings conducted against him. Specifically, Beck claims that the defendants failed to articulate facts sufficient to demonstrate they performed "quasi-judicial" functions under the factors set forth in Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Beck additionally argues that the district court improperly invoked our decision in O'Neal v. Mississippi Board of Nursing, 113 F.3d 62 (5th Cir. 1997)(holding

4

that state nursing regulatory board and its members were entitled to absolute immunity for performing quasi-judicial functions). The defendants, on the other hand, maintain that absolute immunity is applicable because the Board performed quasi-judicial functions. In the alternative, the defendants assert that qualified immunity is applicable because the actions taken against Beck did not violate a clearly established constitutional right, and were not objectively unreasonable.

Before we discuss the merits of the absolute immunity issue, we find at the outset that Beck erroneously characterizes the burden of proof for summary judgment. Beck argues that the burden rests on the defendants to articulate facts to support their claim of immunity. Our well established summary judgment jurisprudence clearly shows otherwise. The moving party is not required to put forth evidence to meet its summary judgment burden for a claim of immunity. It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity. See Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992). "Once the [movant] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it." Whatley v. Philo, 817 F.2d 19, 20 (5th Cir. 1987) (emphasis added). The movant can support its motion by solely relying on the pleadings. See Salas 980 F.2d at 299 (citing Celotex, 477 U.S. at 324, 106 S.Ct. at 2553). In the instant case, the defendants' motion for summary judgment asserted that they were entitled to absolute immunity because they performed quasi-judicial functions. As such, this assertion was sufficient to meet their summary judgment burden below. Having done so, the burden shifts to Beck to show that the defendants were not entitled to immunity.

As to the merits of the immunity issue, in a § 1983 action, the Supreme Court has recognized that a defendant may assert "absolute immunity." See Bogan v. Scott-Harris, 523 U.S. 44, 119 S.Ct. 966, 140 L.Ed.2d 79 (1999); Kalina v. Fletcher, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Absolute immunity prevents a person whose federal rights have been violated by a government official any type of remedy, regardless of the conduct. Because absolute immunity denies a plaintiff from obtaining redress for a constitutional violation in federal court, the Supreme Court has been "quite sparing" in recognizing absolute immunity. Forrester v. White, 484 U.S. 218, 224,

5

108 S.Ct. 538, 542, 38 L.Ed.2d 555 (1988).  It is well settled that judges and prosecutors are entitled to absolute immunity.  See Stump v. Sparkman, 435 U.S. 349, 355, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)(judicial immunity); Imbler v. Pachtman, 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)(prosecutorial immunity).[2]

Additionally, the Supreme Court has recognized that executive branch officials, when participating in a federal administrative agency's adjudicative process, are entitled to absolute immunity because they perform functions comparable to those of judges and prosecutors.  See Butz, 438 U.S. at 512-13.  Under Butz's "functional approach," the Court looks at the nature of the function performed, not the identity or title of the actor who performed it.  See Buckley v. Fitzsimmons, 509 U.S. 259, 268, 113 S. Ct. 2605, 125 L.Ed.2d 209 (1993); see also Mays v. Sudderth, 97 F.3d 107, 110 (5th Cir. 1996).  Thus, if a claim arises from a government or state agency performing "quasi-judicial" functions, the agency would be entitled to absolute immunity. In Butz, the Court identified a nonexhaustive list of factors to determine whether an agency and its members performed "quasi-judicial" functions, and thus are entitled to absolute immunity:

> (1) the need to assure that the individual can perform his functions without harassment or intimidation;
> (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;
> (3) insulation from political influence;
> (4) the importance of precedent;
> (5) the adversary nature of the process;  and
> (6) the correctability of error on appeal.

Butz, 438 U.S. at 512, 98 S.Ct. at 2913-14.  No one factor is controlling.

In O'Neal v. Mississippi Bd. of Nursing, we applied the Butz factors and held that the members of a state nursing board were entitled to absolute immunity because the board and its members performed quasi-judicial functions.  See 113 F.3d at 67.  Beck essentially argues that the

---

[2] The essential rationale behind absolute immunity for judges is that, without protection from retaliatory suits, a judge would lose "that independence without which no judiciary can be either respectable or useful."  See Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871). As to prosecutors, entitlement flows from performance of activities that are intimately associated with the judicial process, such as initiating and prosecuting a criminal case.  See Imbler, 424 U.S. at 430, 96 S.Ct. at 995

instant case is distinguishable from O'Neal because the presence of adequate safeguards is lacking. However, a review of the record reveals the contrary. When the Board revoked Beck's license in 1987, the dentistry profession in Texas was regulated under comprehensive statutory and administrative schemes. See Tex. Rev. Civ.Stat.Ann. art. 4543 et seq.[3] and Tex. Admin. Code T. 22, Pt. V. Article 4548h provided procedures and guidelines for the revocation of dental licenses. Article 4548h required that the Board give the dentist adequate notice of the disciplinary hearing that includes the date, time, and place of the meeting at which the complaint is to be heard, and a copy of the complaint. Id. art. 4548h § 4. Furthermore, the dentist in question may present evidence to defend the allegations in the complaint. Id. The dentist may also be represented by counsel or an advocate. 22 T.A.C. § 107.21. The Board had subpoena powers to compel the production of evidence and the presence of those persons deemed to have knowledge that may assist the Board in reaching a proper decision. Tex. Rev. Civ.Stat.Ann. art.4548h § 4. Additionally, if the Board issued an adverse ruling, the dentist had thirty days to appeal the decision to the state district court where the alleged offense occurred. Id. § 5. Furthermore, article 4548h § 5 provided that a dentist may apply for a supercedeas bond to stay the execution of the judgment and retain his license to practice until the appeal was resolved. As such, Texas' regulatory scheme embodied several safeguards that O'Neal and other courts have looked upon favorably. See O'Neal, 113 F.3d at 66 ("Procedural safeguards such as the right to counsel, adequate notice of a hearing, and the opportunity to present and cross-examine witnesses are all readily available to any person charged by the board."); Bettencourt v. Board of Registration in Medicine of the Commonwealth of Massachusetts, 904 F.2d 772, 783 (1st Cir. 1990)(representation by counsel, written opinions, and the ability to introduce oral and documentary evidence "indicate that enough checks on malicious action by Board members exist to warrant a grant of absolute immunity for the Board members' actions in their adjudicatory

---

[3] In 1999, Tex. Rev. Civ. Stat. Ann. art 4543 et. seq. was repealed by Acts 1999, Leg., ch. 388, § 6(a), effective September 1, 1999.

capacities."); see also Mishler v. Clift, 191 F.3d 998, 1006 (9th Cir. 1999)(Nevada's statutory scheme reduces that need for private damages actions as a means of controlling unconstitutional conduct).

Beck nonetheless asserts that adequate safeguards were lacking because several members of the Board stated in their depositions that they were unaware that Pitcock, Youngblood, and the DPS officer inspected Beck's dental office prior to the disciplinary proceedings. Furthermore, Beck asserts that he did not receive adequate notice of the disciplinary hearing, that he was not present at the hearing,[4] that he did not have an opportunity to confront and cross-examine witnesses, that he had no attorney present, and that he did not have the opportunity to call witnesses. Nonetheless, the Board members are entitled to absolute immunity "from liability for [their] judicial acts even if [their] exercise of authority is flawed by the commission of grave procedural error." Stump v Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).[5] Thus, the inquiry is not whether the defendants committed error while executing the safeguards, but whether adequate safeguards existed. The summary judgment evidence supports a finding that adequate safeguards existed.

Additionally, the summary judgment evidence reveals that other Butz factors weigh in the Board members' favor. First, because the Board members were statutorily empowered to revoke, suspend and deny licenses, "it is important that [B]oard members [were able to] make these decisions free from the threat of incurring personal liability for every decision they hand[ed] down." O'Neal, 113 F.3d at 66. Second, as to isolation of political influence, the Board members were appointed by the Governor to six-year staggered terms, with the terms of one-third of the Board members expiring every two-years. See Tex. Rev. Civ. Stat. Ann. art. 4542. The board members in O'Neal were

---

[4] The record appears to cut against Beck's claims. First, the defendants included as part of their summary judgment evidence copies of two notices that were sent to Beck which indicated the date, time, and purpose of the disciplinary hearing. Furthermore, an acknowledgment of receipt of the notices were entered into evidence at the disciplinary hearing. Thus, apparently Beck's absence at the hearing was voluntary and did not result from the Board's failure to give him an opportunity "to be heard."

[5] Several Board members stated in their affidavits that it was standard practice for Board members to be unaware of administrative searches prior to the disciplinary hearings. Beck does not articulate how this practice deprived him of any recognized procedural due process rights.

8

appointed under similar conditions and we observed that members "were independent [] and [were] under no pressure to resolve disputes in favor of one party or the other." 113 F. 3d at 66. Third, although the record does not reveal whether the Board abided by internal precedent, or precedent from the state or federal court, nevertheless, the absence of this factor is not dispositive.

Fourth, the disciplinary proceedings were adversarial in nature. The dentist was able to be represented by counsel, 22 T.A.C. § 107.21, and present evidence to defend against the charges. Tex. Rev. Civ.Stat.Ann. art.4548h § 4. The hearings were conducted by a presiding officer who administered oaths to witnesses and made evidentiary rulings. Id. § 107.36.

Finally, as stated above, the Board's final order was appealable to a state district court. Tex. Rev. Civ. Stat. Ann. art. 4548h § 5. As such, errors committed by Board members could have been redressed on review to the state district court. Therefore, application of the Butz factors to the instant case weighs in favor of a finding that the defendants performed a quasi-judicial function when they participated in the disciplinary proceedings in question. Because the defendants' role in the instant case is analogous to the board members' role in O'Neal, the district did not err when it cited O'Neal and granted summary judgment in favor of the Board members.

II.    Michael Pitcock

A.    Absolute Immunity

Beck argues that Pitcock, an investigator for the Board, is not entitled to absolute immunity.[6] Specifically, Beck maintains that Pitcock, a non-appointed staff member, functioned as an investigator rather than an adjudicator. To support this contention, Beck emphasizes that Pitcock had no authority to adjudicate, no authority to prosecute or decide which cases were prosecuted, and no authority to present evidence. The court apparently rejected Beck's claim and granted summary judgment in favor of Pitcock based on absolute immunity.[7]

---

[6] Beck argues that Pitcock's investigative conduct, namely the warrantless search of his dental office, violated his Fourth Amendment rights.

[7] The district court's one-page summary judgment order is not explicative nor is it accompanied by a memorandum of findings of facts or conclusions of law. Nevertheless, the order on its face

9

After a careful de novo review of the record, we find that the district court erred when it granted summary judgment to Pitcock based on absolute immunity. The record reveals that Pitcock performed investigative, not adjudicative nor prosecutorial functions. During the investigation and prosecution of Beck's case before the Board, Pitcock was an assistant director charged with overseeing the investigative section of the Board. He reported to William S. Nail ("Nail"), the executive director of the Board during Pitcock's disciplinary proceedings.[8] Nail summarized the role of the Board's staff investigators in his deposition as that of gathering information, such as documents, contacting witnesses, and contacting the dentist that was the subject of the investigation. Pitcock stated in his deposition that "[w]e complete the investigation and turn it over to the Board Secretary." He further, stated that "we would send in all the files to the Board Secretary and they would review the investigations and make the decision."[9] The record does not show that Pitcock participated in the Board's adjudication of Beck. As such, we find that Pitcock performed only an investigative function.

This circuit has not squarely addressed whether an investigator for a state professional regulatory board is entitled to absolute immunity under Butz and O'Neal. By analogy, although a prosecutor is absolutely immune when she acts in her role as an advocate for the state by initiating and pursuing prosecution, see Burns v. Reed, 500 U.S. 478, 491, 111 S.Ct. 1934, 1942, 114 L.Ed.2d 547 (1991), or when her conduct is "intimately associated with the judicial phase of the criminal process," id. at 492, 111 S.Ct at 1942, she does not enjoy absolute immunity for her acts of investigation or administration. See Buckley v. Fitzsimmons, 509 U.S. 259, 273 113 S.Ct. 2606, 125

---

declares that O'Neal was the basis for the court's decision. Because O'Neal mainly addressed the question of absolute immunity, we interpret the order as a grant of summary judgment based on absolute immunity.

8 Nail was a non-appointed staff member of the Board.

9 Under article Tex. Rev. Civ. Stat. art. 4548h § 4, Secretary of Board was vested with the discretionary authority to determine whether a complaint filed against a dentist should be heard before the Board. Article 4543 provided that the Board elect a President and a Secretary of the Board from the nine members appointed to the Board.

L.Ed.2d 209 (1993). In the instant case, Pitcock neither initiated nor pursued prosecution of the complaint against Beck. Thus, Pitcock's investigative activities are not covered under absolute immunity.

The defendants nonetheless argue that Pitcock enjoys absolute immunity because he was a staff member of the Board, and thus the umbrella of absolute immunity that covers the Board and the appointed members covers him as well. To support this claim, the defendants cite Bettencourt v. Board of Registration of the Commonwealth of Massachusetts, 904 F.2d 772 (1st Cir. 1990). In that case, the plaintiff sued a state medical board and three staff members for alleged constitutional violations regarding the revocation of his medical license. The three staff members rendered legal advice to the board, assisted in the writing of the final order, and met with board members to determine the appropriate sanctions and punishment. Id. at 785. The First Circuit observed that these functions relate to the heart of the adjudicatory process, and thus the staff members were entitled to quasi-judicial immunity. Id. Our reading of Bettencourt indicates that the board's immunity did not ipso jure extend to the staff members but rather, the court conducted a factual examination of the staff members' functions and determined that they were entitled to quasi-judicial immunity. Thus, the staff members' quasi-judicial immunity existed independent of the board members' immunity.

In the instant case, Pitcock's role as an investigator was not at the heart of the adjudicative process. Pitcock states in his deposition that he played no role in deciding whether to commence disciplinary proceedings against Beck. He did not help draft the final order, nor did he advise the Board as to the appropriate sanction. As established above, Pitcock's own words best describe his role when he stated, "we just investigate the facts and let the Board secretary make the decision." Therefore, under these circumstances, the district court erred when it invoked O'Neal and granted

11

summary judgment to Pitcock because he did not perform either an adjudicative or prosecutorial function, and thus is not entitled to absolute immunity.[10]

### B. Qualified Immunity

The defendants in the alternative argue that Pitcock is entitled to qualified immunity. Specifically, the defendants contend that Pitcock and the DPS's search of Beck's dental office was a valid administrative search.

Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Sorenson v. Ferrie, 134 F.3d 325, 327 (5th Cir. 1998). Claims of qualified immunity are reviewed under a two-step analysis. The first question is whether the plaintiff has asserted the violation of a clearly established constitutional right. If so, the court decides whether the defendant's conduct was objectively reasonable. Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).

The summary judgment evidence reveals that Pitcock's inspection of Beck's office did not violate clearly established constitution or statutory rights. Warrantless searches are presumptively invalid. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 2306 & n. 4, 110 L.Ed.2d 112 (1990). However, administrative or regulatory searches are exceptions to the warrant requirement. New York v. Burger, 482 U.S. 691, 107 S.Ct. 2636, 2644, 96 L.Ed.2d 601 (1987). Such warrantless searches are constitutional only (1) if there is a substantial governmental interest that informs the

---

[10] The defendants' analogy of Pitcock's role to a probation officer who prepares a presentence report also is not persuasive. The preparation of a presentence report is a narrow function that is "intimately associated with the judicial phase of the criminal justice process." Spaulding v. Neilsen, 599 F.2d 728, 729 (5th Cir. 1979). As established above, Pitcock's role was not intimately associated with the Board's adjudication of Beck.

Furthermore, we reject Beck's argument that Pitcock functioned as a complaining witness. Beck fails to point to any evidence that suggest that Pitcock initiated the complaint against Beck. Furthermore, Beck does not show that Pitcock swore to the truthfulness of the allegations in the complaint. Cf. Kalina, 522 U.S. 118, 118 S.Ct 502.

regulatory scheme pursuant to which the inspection is made, (2) if warrantless inspections are necessary to further the regulatory scheme, and (3) if the inspection program provides a constitutionally adequate substitute for a warrant, in terms of certainty and regularity of its application. Id.

In the instant case, the regulation and monitoring of the use of controlled substances, particularly in the dentistry industry, is a substantial state interest. Furthermore, the inspection was conducted pursuant to two then coexisting regulatory schemes. Under the Texas Administrative Code, records and documents in dental offices were subject to on-site inspections. 22 T.A.C. § 109.144 ( "§ 109.144" or "section 109.144"). The inspection of Beck's office was also conducted pursuant to the Texas Controlled Substance Act. Texas Civ.St. Art. 4476-13 to Art. 4476-15.[11]

Beck nonetheless argues that the search was not conducted pursuant to a regulatory scheme, but rather the search was conducted for purposes of uncovering criminal activity. To support his claim, he points out that during the inspection Pitcock was accompanied by a law enforcement officer from the controlled substance division of the DPS. Furthermore, Pitcock stated in his deposition that he suspected Beck of criminal activity regarding the improper use of controlled substances. Pitcock stated that he was concerned that Beck was ordering unusually high volumes of controlled substances. Thus, Beck essentially maintains that the search was illegal because it was motivated by suspicions of criminal wrongdoing.

Nonetheless, the Supreme Court rejected a similar argument in United States v. Villamonte-Marquez when the Court upheld an administrative search of a vessel for marijuana even though U.S. Customs agents were accompanied by state law enforcement officers, and were following an informant's tip that the ship was carrying contraband. See 462 U.S. 579, 584, 103 S.Ct. 2573, 77 L.Ed.2d 22, n.3 (1983)(discussing Scott v. United States, 436 U.S. 128, 135-139, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). Furthermore, we observed that "[a]dministrative searches conducted pursuant

---

[11] Texas Civ. Stat. Art. 4476-13 to Art. 4476-15 were repealed by Acts 1989, 71st Leg., ch. 678, S 13(1), effective Sept. 1, 1989.

to valid statutory schemes do not violate the Constitution simply because of the existence of a specific suspicion of wrongdoing." United States v. Thomas, 973 F.2d 1152, 1155. (5ᵗʰ Cir. 1992). Thus, Pitcock's suspicions of Beck did not render the administrative search unreasonable.

Finally, the inspection programs provided an adequate substitute for a warrant. Although the present version of § 109.144 provides that inspections may be conducted "on demand," § 109.144 did not contain the "on demand" language when Beck's office was inspected. Section 109.144 was subsequently amended to include the "on demand" language. As such, Beck argues that the inspection was improper because neither Pitcock nor the DPS officer that conducted the search gave him prior notice of the inspection. However, section 5.01(c) of the Controlled Substances Act ("§ 5.01(c)") in pertinent part provided that officers ". . . shall have the right to enter premises and conduct such inspection at reasonable times upon stating his purpose and presenting to the owner, . . . of the premises appropriate credentials and written notice of his inspection authority." Thus, § 5.01(c) did not require that prior notice be given. The summary judgment evidence includes a copy of the notice of inspection that was given to Beck when Pitcock and the DPS officer arrived to Beck's office to the conduct the search.

Thus, under these circumstances, Beck does not show a violation of a clearly established constitutional right. Having failed to do so, we hold that Pitcock was entitled to qualified immunity.

CONCLUSION

We AFFIRM the district court's granted of summary judgment in favor of the Board members based on absolute immunity, and AFFIRM summary judgment in favor of Michael Pitcock, albeit based on qualified rather than absolute immunity. Accordingly, the district court's denial of Beck's post-judgment motions are AFFIRMED.

14