**Derrin BASCO**

v.

**WAL-MART STORES, INC.**

**No. CIV.A.00–3184.**

United States District Court,
E.D. Louisiana.

May 9, 2002.

Morris Bart, III, Morris Bart, PLC, New Orleans, LA, Michael X. St. Martin, Conrad S. P. Williams, III, St. Martins & Williams, Houma, LA, Jim S. Adler, Jim S. Adler & Associates, Houston, TX, Franklin D. Azar, Kenneth Pennywell, Franklin D. Azar & Associates, Aurora, CO, John M. O'Quinn, Russell T. Lloyd, O'Quinn, Laminack & Pirtle, Houston, TX, Gerald L. Bader, Jr., Renee B. Taylor, Bader & Associates, PC, Denver, CO, for Plaintiff.

Robert K. McCalla, Lawrence Joseph Sorohan, II, Fisher & Phillips, LLP, New Orleans, LA, for Defendant.

## ORDER AND REASONS

DUVAL, District Judge.

Before the Court is plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure (rec. doc.37) and defendant's Partial Motion for Summary Judgment (rec.doc. 42). Plaintiffs [1] filed suit against defendants in state court on September 5, 2000. Defendants subsequently removed the case to federal court and plaintiffs' motion to remand was denied (rec.doc. 18).

Generally, plaintiffs allege that Wal–Mart and Sams stores (collectively referred to herein as "Wal–Mart") have engaged in widespread wage abuses including: (1) providing too few rest and meal breaks and (2) requiring employees to "work off-the-clock" and refusing to pay them for all hours worked.[2] Specifically, plaintiffs' petition asserts breach of contract and unjust enrichment causes of action against defendant.[3] Because so many plaintiffs claim to have been affected by defendant's conduct, they have sought to have the following class certified:

All present and former employees of Wal–Mart and Sams stores who are or who have been employed at one of the

---

1. Representative plaintiffs include Dorothy English, Colby Lagrue and Regina Geason. Since the original complaint was filed Derrin Basco was replace by Betty Matthews.

2. Plaintiffs' Complaint, p. 2.

3. Plaintiff's Petition for Damages, p. 7.

89 stores in Louisiana since September 5, 1990 and were (1) forced to work off the clock and/or (2) deprived of meal or rest breaks.

Plaintiffs estimate that the class will consist of approximately 100,000 employees.

Currently pending before the Court are: (1) plaintiff's Motion for Class Certification (rec.doc. 37), (2) defendant's Partial Motion for Summary Judgment (rec.doc.42), and (3) defendant's Motion to Limit the Testimony of plaintiffs Statistics Expert, James R. Thompson (rec.doc. 52). Oral argument was heard on January 9, 2002. After consideration of the memoranda, relevant law and oral presentations, this Court **DENIES** plaintiff's motion for class certification and **DENIES** defendant's motion for partial summary judgment for the reasons that follow.

## BACKGROUND

All applicants for employment with Wal–Mart are required to review and fill out an application for employment which includes the following language:

I further understand that no one other than the President of Wal–Mart Stores, Inc. or Vice President of its People Division has the authority to enter into an employment contract or agreement.

Hired employees are required to attend an orientation session conducted by a personnel manager during which they are inundated with Wal–Mart's policies and procedures. Employees are also provided with an employee handbook and are required to sign the following acknowledgment:

This handbook is intended solely as a general information guide to let Associates know about the current policies and programs Wal Mart has in place. The policies and benefits presented in this handbook are for your information and do not constitute terms or conditions of employment.... This handbook is not a contract.[4]

The handbook references rest and meal breaks and work performed off-the-clock and states that:

Associates will be provided break and meal periods during their scheduled work shift. Associates are paid for up to two break periods per work shift. No Associate should work for over six hours without taking at least a 30 minute meal period. Remember to clock in and out for meal periods.

\* \* \* \* \* \*

This is one of your responsibilities. Our expectation is very clear. Always clock in at the beginning of the workday and at other appropriate times; ask your supervisors for specific details. If you forget to do this, notify your Supervisor immediately so corrections can be made. Your hard work is appreciated, and we want to pay you for this work. Remember that working off-the-clock is not only against Wal–Mart policy—it is against the law. Always clock in when you are working—Always! There are no exceptions.[5]

While plaintiffs never signed an employment contract with defendant, they contend that: (1) Wal–Mart entered into oral contracts with plaintiffs, through the personnel managers who hired them, and agreed to provide certain rest and meal breaks each day and to pay them for all hours they worked, (2) the contractual agreements between plaintiffs and defendant were made at the time of hiring and the terms of each contract are evidenced in Wal–Mart's employee handbook and other orientation materials, and (3) Wal–Mart breached its contractual obligations

**4.** Motion for Partial Summary Judgment, p. 3–4.

**5.** Opposition to Class Certification, p. 5.

throughout its Louisiana stores through a "uniform policy" that requires employees to miss rest and meal breaks and work off-the-clock and as a condition of employment.

Should the Court certify the class, plaintiffs intend to use several forms of evidence to prove defendant's liability and to establish the amount of damages incurred. First, to support its contention that contracts were *formed* between plaintiffs and defendant, plaintiffs will introduce: (1) individual testimony as to the "oral terms" of the "contracts" that were allegedly agreed upon when they were hired, (2) the employee handbook, and (3) other orientation materials. To prove defendants *breached* the contractual agreements to provide rest and meal breaks and to prohibit off-the-clock work plaintiffs will offer: (1) representational testimony, (2) documentary evidence, (3) expert testimony and (4) statistical evidence.

For example, in order to prove plaintiffs missed lunch and rest breaks, defendants will rely on statistical analysis gleaned from an expert's review of Wal–Mart's Time Clock Archive Reports, Time Adjustment Requests, and Time Clock Punch Exception Reports for hourly employees who were employed during the applicable time frame. And, to support plaintiffs' testimony that they were required to work off-the-clock, plaintiffs will offer statistical evidence compiled by a professional polling firm. The polling firm plans to administer a survey to a random selection of names drawn from Wal–Mart's employee records and determine the average number of hours per week worked off the clock to a 95% or higher confidence level. The results gleaned from the statistical analysis will also be used to establish the aggregate amount of damages owed to plaintiffs.

Defendants contend that: (1) Wal–Mart's *policy* is to provide rest and meal breaks and never to allow and employee to work off-the-clock, (2) there was no written or oral *contract* by which defendant was *obligated* to provide paid rest and meal breaks, (3) the employee handbook (which references to rest and meal breaks) contains a disclaimer that specifies it is not a contract, (4) Louisiana law is clear that an employee handbook can not establish a contractual obligation [6], (5) the employment application clearly states that no one but the President of Wal–Mart or the Vice President of the People Division has authority to enter an employment *contract* on behalf of Wal Mart, and (6) if plaintiffs were denied rest or meal breaks or required to work off-the-clock, it was a *deviation* from Wal–Mart policy—not *because of* a "uniform policy," and could have occurred for a myriad reasons—including voluntary decisions by the employees.

Furthermore, defendant objects to the use of statistics as a means of proving liability or damages because it will: (1) deprive them of the right to contest the elements of each claim and prove affirmative defenses as to each plaintiff and (2) violate their Seventh Amendment right to

---

**6.** *See Stanton v. Tulane Univ. of La.*, 777 So.2d 1242 (La.App. 4th Cir.1/10/01)(*quoting Mix v. University of New Orleans*, 609 So.2d 958 (La.App. 4th Cir.1992) and concluding that "there are no Louisiana cases holding that employee manuals, policies or grievance procedures confer any contractual rights upon employees or create any exceptions to the employment at will doctrine"), *Schwarz v. Administrators of the Tulane Educational Fund,* 699 So.2d 895 (La.App. 4th Cir.1997)(holding that grievance procedure handbook is a unilateral expression of company policy and does not evidence meeting of the minds as the terms of such a handbook were not bargained for by the parties and any benefits conferred by it are merely gratuities) and *Wall v. Tulane,* 499 So.2d 375 (La.App. 4th Cir.1986)(holding that a policy handbook was merely informational in nature and did not constitute a binding promise).

have a jury determine the distinct and separable issues of the actual damages of each of the extrapolation plaintiffs.

The Court now turns to the merits of the Motion for Class Certification.

## ANALYSIS

### *Class Certification Pursuant to Rule 23*

Rule 23 of the Federal Rules of Civil Procedure sets forth the criteria that the Court must employ in determining whether to certify a class. While district courts have great discretion in determining whether to certify a class, the Supreme Court has noted that certification should not be granted unless the Court is satisfied, after rigorous analysis, that all prerequisites have been met. *General Tel. Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Thus, a class may be certified under Rule 23 if it meets the four prerequisites of Rule 23(a) and one of the three additional requirements of Rule 23(b). *In re Ford Motor Co. Bronco II Product Liability Litigation,* 177 F.R.D. 360, 365 (E.D.La.1997). In the case at bar, plaintiff seeks certification of the class under Fed.R.Civ.P. 23(b)(3) [7]. Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Pursuant to Rule 23(b)(3), plaintiffs must also demonstrate that:

> [Q]uestions of law or fact common to members of the class predominate over

any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the finding include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The Court now turns to the prerequisites of Rule 23(a).

#### *(1) Numerosity*

■ Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Although the number of members in a proposed class is not determinative of whether joinder is impracticable, it has been noted that any class consisting of more that forty members should "raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir.1999). Plaintiffs have alleged that there are at least 100,000 present and former employees to be joined in the class and the Court finds that numerosity has been established.

#### *(2) Commonality*

■ The test for commonality is not demanding and is met when "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen,* 186 F.3d at 625 *citing Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir.1997). In the case at bar, plaintiffs contend that

---

**7.** Motion in Support of Class Certification, p. 3.

the commonality requirement has been satisfied. The following is an illustrative list of the issues plaintiffs contend are common issues among the purported class: (1) all members are in the same "legal position" because, allegedly, they each entered the same contract with defendant at each of their orientation seminars and followed the same policies outlined in the employment handbook, (2) all members occupy the identical "factual position" as they are all former or present hourly employees of defendant, employed in the same geographic region, during a specific time, and (3) defendants' employment practices, including its policies toward "off the clock work" and missed lunch/rest breaks, are uniformly applied in all of its stores in Louisiana.

This Court concurs that there are at least two common issues presented by plaintiffs case including whether: (1) defendant entered into and breached its contracts with plaintiffs by requiring them to work off-the-clock and miss meal and rest breaks and (2) defendant's employment practices violate La R.S. 26: 632.

■ Commonality is "ordinarily is considered in connection with the Rule 23(b)(3) predominance inquiry because the court can usually find at least one issue that can be said to be 'common under the liberal wording of Rule 23(a)(2)' ". *In re Ford Motor Co. Bronco II*, 177 F.R.D. 360, 366 (E.D.La.1997). Thus, the Court will assume for purposes of Rule 23(a) that there is at least one common issue between plaintiffs and defendant and will discuss commonality in greater detail under the predominance inquiry of Rule 23(b)(3).

### (3) Typicality

■ The test for typicality, like the test for commonality, is not demanding and focuses on the general similarity between the named plaintiff' legal and reme-dial theories and the theories of those whom they purport to represent. *Lightbourn v. County of El Paso, Texas,* 118 F.3d 421, 426 (5th Cir.1997) and *Mullen,* 186 F.3d at 625. That focus is more important than the inquiry over the relative strengths of the named and unnamed plaintiffs' cases. *Bertulli v. Independent Ass'n of Continental Pilots,* 242 F.3d 290, 298 n. 32 (5th Cir.2001) *citing Jenkins v. Raymark Ind., Inc.,* 782 F.2d 468, 472 (5th Cir.1986). Furthermore, "[d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interest and the class members' interest." *Musmeci v. Schwegmann Giant Super Markets,* 2000 WL 1010254 (E.D.La. 2000) citing *Mullen,* 186 F.3d at 626.

■ As stated in *In re Ford Motor Company Vehicle Paint Litigation,* 182 F.R.D. 214 (E.D.La.1998) *citing Newberg on Class Actions* § 3–13, at 3076 (3d.1992):

> "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." One of the purposes of the typicality requirement is to ensure that the representative's interest is "aligned with those of the represented group, and in pursing his own claims, the named plaintiff will also advance the interests of the class members."

■ Plaintiffs contend that the typicality requirement has been met in this case because the representative plaintiffs have been affected by the same employment practices that affect all members of the Class. Namely, plaintiffs believe that all members of the class have been "subjected to Wal–Mart's wrongful pattern and practice of wide-spread wage abuses and required to work off the clock and miss

breaks" and assert that all claims brought by themselves and the class are based on the "same legal theories, breach of contract, quantum meruit, and uncompensated imprisonment...".[8] Plaintiffs also posit that there are no conflicts between their positions and those of other class members.

Defendants, however, contend that "typicality" has not been met in the case at bar and point to potential conflicts between class members and between members of the class and the named plaintiffs because: (1) many of the managers who supervise and schedule employees are hourly employees and proof of breach of contract claims will necessarily involve one class member accusing another of violating Wal–Mart policies that encourage breaks and prohibit working off-the-clock and (2) during the ten year period covered by the class, many members who started as hourly employees have been promoted to management positions.

Because the test for typicality is not demanding, this Court looks at the requirement in the light most favorable to the plaintiffs. While the amount of potential damages for each plaintiff will differ and the circumstances surrounding the "contract formation" in each case will vary, the basis of the representative plaintiffs' claims are typical of those raised by every member of the class and are based on same alleged "policy or practice" of the defendant.

### (4) Adequacy of Representation

Rule 23(a)(4) also requires that the representative parties fairly and adequately protect the interests of the class. The adequacy requirement looks at both the class representatives and their counsel. *Jenkins v. Raymark, Indus., Inc.,* 782 F.2d 468, 472 (5th Cir.1986). However, there is "no formula for deciding this issue ... and the adequacy determination is made based on the circumstances of each individual case." *In re Ford Motor Co. Bronco II,* 177 F.R.D. 360, 367 (E.D.La. 1997) *citing McGowan v. Faulkner Concrete Pipe Co.,* 659 F.2d 554, 559 (5th Cir.1981). Because a final judgment in a class action is binding on all class members, this requirement must be satisfied. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1083 (6th Cir.1996).

Plaintiffs posit that they adequately represent the class because their interest are "directly aligned" with those of the other Class members. Plaintiffs' attorneys also note that they have the expertise and resources to maintain this suit as a class action. Defendants have made no objection to the adequacy of representation in this case and the Court finds that there is adequacy of representation.

The Court now turns to the requirements of Rule 23(b)(3).

### Rule 23(b)(3)

As previously noted, in order for the Court to certify this putative class under Rule 23(b)(3), it must inquire into whether: (1) common issues predominate and (2) the class action is a superior method to resolve the controversy. In order to satisfy the predominance requirement, common issues must constitute a significant part of the individual cases. To make this determination requires an understanding of the relevant claims, defenses, facts, and substantive law. *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998).

### Predominance

Plaintiffs argue the "predominance" requirement of Rule 23(b)(3) is satisfied because: (1) defendants' *liability* for breach of contract against plaintiffs predominates

---

**8.** Memoranda in Support of Motion for Class Certification, p. 9.

over the individualized *damages* that each plaintiff may be entitled to receive, (2) common questions of fact predominate the "liability issue" because all plaintiffs were affected by Wal–Mart's "unofficial company wide policy" that encourages missed lunch and meal breaks, (3) as to the "damages issue," plaintiffs seek only economic damages for lost wages and missed breaks—not personal injury damages [9] or compensatory and punitive damages.[10]

Plaintiffs also urge that the class action is the superior mechanism to try this case because "without class certification, the majority of Wal–Mart hourly employees will effectively be barred from obtaining a decision on the merits." [11]

Defendants, however, contend that common questions of law and fact do not predominate over individual issues and rely largely on the Court's rationale in *Allison v. Citgo*, 151 F.3d 402 (5th Cir.1998) in which the Court reasoned that claims for compensatory and punitive damages in a Title VII should not be tried through a class action because they require individualized and independent proof of injury. Specifically, defendant notes that the Court in *Allison* reasoned:

> The plaintiffs' claims for compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals rather than the class as a whole: what kind of discrimination was each plaintiff subjected to; how did it affect each plaintiff emotionally and physically, at work and at home, what medical treatment did each plaintiff receive and at what expense; and so

on and so on. Upon such circumstances, an action conducted nominally as a class action would degenerate in practice into multiple lawsuit separately tried.

Opposition to Class Certification, p. 8 citing *Allison*, at 419 (citations omitted).

And, responding to plaintiffs' claims that individual issues will not predominate over the common issues among all class members, defendants cite the following reasoning from *Allison*:

> In *Jackson* [*v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir.1997)] plaintiffs alleged that Motel 6 engaged in a nationwide practice of racial discrimination in renting vacant rooms and providing housekeeping services. The district court certified a class action under Rule 23(b)(3). The Eleventh Circuit reversed holding that class certification was an abuse of discretion. The court reasoned that plaintiffs' claims would require "distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination." *Id* at 1006. It found dispositive the fact that "most, if not all, of plaintiffs' claims [would] stand or fall, not on the answer to the question whether Motel 6 has a practice or policy of discrimination, *but on the resolution of these highly case specific issues.*" *Id.* We find the same logic applicable to the plaintiffs' claims for compensatory and punitive damages in the instant case. *The success of these claims will turn ultimately on special circumstances of each individual's case.* Accordingly, we hold that the district court did not abuse

---

**9.** Distinguishing the case at bar from *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297 (5th Cir.1998) in which the court found that class certification was inappropriate due to the predominance of individual issues in cases arising out of claims of asbestos related disease.

**10.** Distinguishing the case at bar from *Allison v. Citgo Petroleum*, 151 F.3d 402 (5th Cir.

1998) in which the Court disallowed class certification in a Title VII suit requesting in part damages for emotional distress and other intangible injury

**11.** Memoranda in Support of Class Certification, p. 16.

its discretion in refusing to certify these claims in a class action under Rule 23(b)(3).

Similarly, defendant reasons that a class action in the case at bar would be inappropriate, in part, because: (1) it is impossible to establish a "typical Wal–Mart working experience" as the putative class consists of a large and diverse workforce performing hundreds of tasks and each Wal–Mart store is unique, (2) the elements required to establish the *existence* of 100,000 contracts (proving offer, acceptance, price, and cause) between plaintiffs and defendant must be considered on an individual basis, (3) there are a plethora of defenses that will be raised to explain or negate plaintiffs' allegations that they worked off-the-clock and can only be addressed on an individual basis—not from a general review of time records, and (5) any amount of damages defendants may be required to pay should be proved and considered on an individual basis.

For the reasons that follow, the Court holds that class certification in the case at bar should be denied.

### Breach of Contractual Agreement to Provide Rest and Meal Breaks

 Under Louisiana law, a contract is formed by the consent of the parties established through offer and acceptance and may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. La. C.C. Art. 1927. As such, an offer is an indispensable element of consent and it is of utmost importance to determine whether a certain declaration of wills amounts to a real offer or is merely a declaration made without an intention of becoming bound.[12] Furthermore, in order to prove the existence of an *oral contract* for a value in excess of $500 there must be proof

from at least one witness and other corroborating circumstances. La. C.C. Art. 1846.

Plaintiffs' allegations that defendants entered into and breached individual, oral contracts for rest and meal breaks with each of the approximately 100,000 class members during their orientation sessions will depend on the resolution of highly specific issues including: (1) whether defendant's employees made offers to plaintiffs, (2) if so, whether those offerors had apparent or actual authority to make the offer, (3) what were the conditions of the offer and terms agreed on by the parties, and (4) whether, and to what extent, was each contract breached. While plaintiffs reason that Wal–Mart had a system-wide policy to enter into these contracts with its employees, every "contract" at issue in this case was created at a different time, by different employees, and under different circumstances. At trial, each plaintiff will be required to establish the existence of a contract with defendant through offer and acceptance and prove the terms of the contract and it is possible that no two plaintiffs' allegations concerning the formation or terms of their contract will be the same. Thus, plaintiffs' argument that the *liability* issues for their breach of contract claim against defendants predominate over the individualized *damages* that each plaintiff may receive ignores the plethora of individual issues that must be resolved before damage amounts are considered.

Assuming the existence of a contract between plaintiffs and defendants and a breach by defendant, the damages suffered by each defendant will vary. Furthermore, defendants will be entitled to raise defenses to each alleged "contract" that may differ with each plaintiff. Individual

---

12. *Terrebonne v. Louisiana Association of Educators,* 444 So.2d 206 (La.App. 1st Cir.1983) citing S. Litvitmoff, Offer and Acceptance in

Louisiana Law: A Comparative Analysis: Part I—Offer, 28 La.L.Rev. 1 (1968)

issues, not common ones, predominate plaintiffs' breach of contract claims.

### Work off-the-Clock

Individual issues also predominate plaintiffs' claims that they were required to work off-the-clock. In this instance, however, the individualized issues will arise from the myriad of possibilities that could be offered to explain why any one of the plaintiffs worked off-the-clock. As defendant noted, as to any of the class members it may argue that: (1) the particular class member did not in fact work off-the-clock, (2) any instructions received to work off-the-clock without compensation were outside the scope of authority and directly contrary to well established policy and practice, (3) even if a particular class member did work off-the-clock, that employee unreasonably failed to avail themselves of curative steps provided by defendant to be compensated for that work, (4) if a class member received instructions from a fellow class member such as a personnel manager or hourly supervisor to work off-the-clock and/or not to request a time adjustment, then the class member unreasonably relied on instructions directly contrary to Wal–Mart's express policy, (5) a class member had an actual and/or constructive knowledge of Wal–Mart's policies banning off the clock work and voluntarily chose to engage in such work in deviance of that policy for any one of a number of reasons, and (6) that a particular class member has a unique animus toward Wal–Mart or its employees that would cause that class member to fabricate or inflate his or her claims. Defendants have the right to present their defenses as to each plaintiffs' claim that he/she was required to work off-the-clock to the jury.

Thus, the individual issues concerning the facts surrounding any plaintiffs' work performed off-the-clock and defendant's potential defenses predominate any common issues.

### Statistical Evidence

Plaintiffs attempt to cure the individualized nature of their contract and "work off-the-clock" claims, in part, by employing statistical analysis to determine the global number of rest and meal breaks taken by employees and the number of hours worked off-the-clock for the entire Wal–Mart workforce in Louisiana during a period of time. However, the Court finds that plaintiff's proposed statistical analysis ignores the highly individualized issues involved in this case including: (1) the myriad of reasons why any employee may have missed a meal or work break or worked off-the-clock, (2) possible defenses available to defendant to explain or justify any employee's missed work or meal break or worked performed off-the-clock, (3) the prerequisites that each plaintiff must establish in order to prove the existence of their "contract" with defendant, and (4) assuming the existence of a contract, the terms and conditions of each contract.

### Damages

Furthermore, this Court does not approve of any attempt by plaintiffs to employ statistics to cure the individualized nature of their breach of contract cause of action or the amount of damages each plaintiff may be entitled to receive by focusing on a "representational sample" of plaintiffs.

In *In re Fibreboard*, 893 F.2d 706 (5th Cir.1990), the Court rejected a trial plan in which the liability of asbestos manufacturers and damages suffered by plaintiffs was to be determine by focusing on 11 of the 3,000 class members. Specifically, the plan was designed so that the jury would hear: (1) representational testimony from a select number of class members, (2) expert testimony regarding questionnaires filled out by plaintiffs and (3) summary evidence as to the total damage award.

Defendants argued that the trial plan violated their Seventh Amendment right to a trial by jury and the Fifth Circuit agreed reasoning that: (1) there was no certainty that the experts statistical measures of representativeness and commonality would be sufficient for the jury to make informed judgments concerning damages, (2) there were disparities among members of the class concerning severity, nature and type of damages incurred, (3) the elements of the case in products liability case focused on individuals—not groups, and (4) there were too many disparities among class members for their common concerns to predominate.

Similarly, in *Cimino v. Raymark*, 151 F.3d 297 (5th Cir.1998), the Fifth Circuit rejected a trial plan in which plaintiffs proposed that causation in a products liability case be determined for a group of individuals and then extrapolated to the entire class to determine the damages recoverable. Defendants argued that the plan interfered with their Seventh Amendment right to have the jury determine individual causation. The Court explained that (1) the Seventh amendment applies to class actions under Rule 23(b)(3) and defendants were entitled to have the their jury determine the causation and damages issues in each case and (2) under Texas law, causation had to be determined as to each defendant. Thus, the Court refused to deviate from the "fundamental principles of due process simply because asbestos cases threatened to swamp the resources of the federal court." [13]

In the case at bar, plaintiffs' reliance on a representational method to determine damages in the instant case would deprive defendants of their right to have a jury determine liability and damages as to each

plaintiff and fly in the face of established contract law.

### *Superiority*

■ The predominance of individual, rather than common, issues relating to plaintiffs' claims and defendant's potential defenses also leads this Court to find that a class action is not a superior method or device in resolving these claims. *Allison*, 151 F.3d at 419.

The Court now turns to Defendant's Motion for Partial Summary Judgment.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

As noted above, defendant has filed a Motion for Partial Summary Judgment as to plaintiffs' breach of contract claims for rest and meal breaks. Defendant's motion does not address plaintiff's "working off the clock" claims or unjust enrichment claims. The Court has reviewed the memoranda and relevant law and **DENIES** defendants' motion.

■ It is defendant's position that there no written or oral contracts formed with plaintiffs under which defendant *contracted* to provide two paid rest breaks and meal breaks. Defendant also points out the following: (1) the employee handbook (which mentions that employees "are paid for up to two break periods per work shift and no associate should work for over six hours without taking at least a 30 minute meal period") has a disclaimer that specifies it is not a contract, (2) Louisiana law has held that employee handbook can not establish a contractual obligation [14], and (3) defendant's employment applications clearly state that no one but the President of Wal–Mart or the Vice President of the People Division has authority to enter an

---

13. *Arnold v. Garlock*, 278 F.3d 426 (5th Cir. 2001)

14. See note 6.

employment contract on behalf of Wal–Mart.

Furthermore, defendant argues that plaintiffs have failed to establish any of the criteria necessary to prove the existence of a contract including: (1) offer, (2) consent, (3) object and (4) cause.

Plaintiffs, however, contend that there are questions of material fact to be resolved at trial including whether there was (1) implied, (2) actual, or (3) apparent authority for defendant's orientation leaders and/or personnel managers to enter employment contracts with plaintiffs. For example, plaintiffs point out that apparent authority exists when a principal has given a third party reasonable belief that an agent has authority to act for the principal. And, in the case at bar, plaintiffs argue they were led to believe that the personnel managers were vested with authority to contract on behalf of defendant because *they* were the ones who advised potential employees as to the specifics of their jobs—the equivalent of apparent authority. Therefore, plaintiffs contend they were reasonable to believe that the personnel managers had the authority to *contract* with plaintiffs for rest and meal break when they were assured that such breaks would be provided as a condition of employment.

Furthermore, while plaintiffs admit that they each signed the acknowledgment in defendant's handbook that clearly states that its contents are not contractual, they argue that: (1) the handbook is evidence of defendant's agreement concerning rest and meal breaks, (2) one employee was required to sign the acknowledgment before they were given the handbook, (3) another employee was not given enough time to read the handbook before signing the acknowledgment, and (4) another employee did not receive the handbook for a year after his employment began. While the employee handbook is not considered a contract, plaintiffs contend that it is proof of the representations made to plaintiffs concerning conditions of employment when they were hired. All of the above are issues of fact that plaintiffs contend should be resolved at trial.

### Motion for Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "An issue is material if its resolution could affect the outcome of the action." *Daniels v. City of Arlington, Texas,* 246 F.3d 500, 502 (5th Cir.2001).

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco,* 76 F.3d 651, 656 (5th Cir.1996) (citation omitted). When the moving party has carried its burden under Rule 56(c), its opponent must do more that show there is some *possible* doubt as to the material facts. Rather, the nonmoving party must come forward with "*specific* facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Beck v. Texas State Board of Dental Examiners,* 204 F.3d 629, 633 (5th Cir.2000).

In reviewing the motion, the Court considers the record as a whole, disregarding evidence that the jury is "not required to believe." *Thomas v. Great Atlantic and Pacific Tea Company, Inc.,* 233 F.3d 326, 329 (5th Cir.2000). Thus, where the rec-

**606**

ord taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita* at 588, 106 S.Ct. 1348. Finally, the Court notes that substantive law determines materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the case at bar, the Court finds that defendant has not met its burden of proof. Rather, this Court concludes that there are several issues of fact that must be resolved at trial including: (1) whether the personnel managers had apparent authority to contract with plaintiff and (2) if so, whether such any contracts (oral or written) were formed and whether they were breached.

Accordingly,

Plaintiffs' Motion for Class Certification is **DENIED** and Defendant's Motion for Partial Summary Judgment is **DENIED**.