Valdir **XAVIER**, et al.

v.

**BELFOR GROUP USA, INC.**

**Civil Action Nos. 06–491, 06–7804.**

United States District Court, E.D. Louisiana.

March 31, 2008.

Order Denying Reconsideration June 23, 2008.

Hector A. Linares, Juvenile Justice Project of Louisiana, Jennifer J. Rosenbaum, New Orleans, LA, Mary C. Bauer, Naomi Tsu, Immigrant Justice Project, Atlanta, GA, Nancy Picard, Julie Marie Richard–Spencer, Robert H. Urann, Robein, Urann, Spencer, Picard & Cangemi, APLC, Metairie, LA, Gregory J. McCoy, Ronald J. Vander Veen, Cunningham Dalman, P.C., Holland, MI, Jose A. Sandoval, Robert Anthony Alvarez, Law Office of Jose A. Sandoval, P.C., Wyoming, MI, Mark H. Verwys, Plunkett Cooney, Grand Rapids, MI, for Valdir Xavier, et al.

Michael David Kurtz, Brian M. Ballay, Erin E. Pelleteri, Steven F. Griffith, Jr., Baker Donelson Bearman Caldwell & Berkowitz, New Orleans, LA, for Belfor Group USA, Inc.

## *ORDER AND REASONS*

G. THOMAS PORTEOUS, JR., District Judge.

Before the Court are Defendant's two Motion to Dismiss in consolidated action 06–7804. Rec. Doc. 113, 114. Plaintiffs filed Oppositions to the Motions. 125,126. The Motions came for hearing with oral argument on January 16, 2008, and were taken under submission. The Court, after considering the memoranda and arguments of the parties, the record, the law, and applicable jurisprudence is fully advised in the premises and ready to rule.

## I. BACKGROUND

Belfor USA Group, Inc. (hereinafter, "Belfor") is a restoration and reconstruction company that specializes in emergency response. It has performed restoration on such large scale projects as Ground Zero and restora-

tion along the gulf coast after Hurricane Katrina. These consolidated actions arise out of Belfor's projects after the 2005 Hurricane season. Following Hurricanes Katrina and Rita in 2005, Belfor was retained to perform its services in Louisiana, Mississippi, and Texas. Belfor undertook some 500 projects and utilized hundreds of subcontractors.[1]

In February 2006, the Xavier matter (Civil Action 06–491) was filed alleging that workers on the Belfor job sites post-hurricanes Katrina and Rita were not paid overtime wages in violation of the Fair Labor Standards Act ("FLSA"). Belfor investigated the allegations, learned that the workers were not paid, and therefore, in accordance with its Master Service Agreement, withheld moneys payable to the subcontractors. Judge Zainey certified for settlement purposes the Xavier case as a collective action. The parties are currently trying to work out the settlement and Belfor will pay the workers out of the sums withheld.

In October 2006, the action subject to this Motion to Dismiss (Civil Action 06–7804) was filed as an FLSA collective action by workers on Belfor job sites along the gulf coast and in New Orleans post-Katrina who were allegedly not paid overtime in violation of the FLSA. The Motion to Collectively Certify this action is pending before the Court and has been continued pending resolution of this Motion. The action names Belfor and its subcontractor Ticos Construction claiming that at all times Belfor and Ticos were plaintiffs "joint employers" and therefore, liable to the plaintiffs under the FLSA.

The Xavier Action (06–491) and the Obando Action (06–7804) have been consolidated.

Presumably because the Obando Action as originally filed was duplicative of the Xavier action (i.e. both sought recovery for the same group of plaintiffs for the same overtime work in areas around the gulf coast after Hurricane Katrina) the original two Obando Plaintiffs, Orestes Obando and Adan Gonzalez, amended the Complaint, after leave of court was granted, expanding the FLSA collective action to all persons similarly situated "nationwide" throughout the United States who performed manual labor on Belfor projects in decontamination, drying, cleaning, odor neutralization, and reconstruction at any time within the three (3) years prior to the filing of the initial complaint and who did not receive overtime compensation. Rec. Doc. 87 at p. 2. In addition, the amended complaint added Louisiana state law causes of action for violations of Louisiana labor and wage law on behalf of the two original Obando plaintiffs and requested class certification for all those similarly situated as to these claims. The Amended Complaint also added four (4) new plaintiffs claiming each was denied overtime payments by Belfor in their respective states amounting to a violation of the FLSA. Additionally, the amended complaint alleges violations of the respective states labor and wage laws on behalf of each individual and seeks class certification of all those claims. See Rec. Doc. 87.[2]

The Complaint was amended a third time, with consent of Defendant, and added claims under Pennsylvania's wage and labor laws by formerly named Plaintiffs, Vanda Lima and Sergio Alho individually and seeking class action status. The third Amended Complaint also brings new cause of action by two (2) new plaintiffs for violations of Ohio's wage and labor laws individually and seeking class action certification. Rec. Doc. 104 at p. 3. Of course, each Plaintiff alleges violations of the FLSA and seeks that a collective nationwide class action be certified.

Total, the amended complaint alleges ten (10) state law class action claims concerning various employment practices in the respec-

---

1. Belfor's Motion submits that it utilizes subcontractors to perform the jobs it contracts. Belfor also submits that it requires its subcontractors to comply with all applicable state laws including entering into a Master Services Agreement which, inter alia, provides that in the event a subcontractor is out of compliance Belfor can terminate its agreement and withhold payment on all invoices. Rec. Doc. 113 at p. 2.

2. Erick Pinherio is the Illinois named plaintiff alleging FLSA violations and Illinois causes of action. Vanda Lima, Sergio Alho, and Evandro Ginelli allege FLSA violations and California causes of action.

tive states in addition to the collective action claim.[3] The Third Amended Complaint is the subject of the instant Motions to Dismiss. In sum, Belfor seeks to dismiss the class action causes of action and the FLSA violations for failure to state a claim pursuant to FRCP 12(b)(6). Rec. Doc. 113. If the Court finds that claims are stated, the second Motion requests dismissal on the merits of the claims.

## II. LAW AND ANALYSIS

■■■ Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir.1997); *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050(5th Cir.1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir.1986). The Fifth Circuit has pointed out the proper inquiry on a Rule 12(b)(6) motion is "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey*, 117 F.3d at 247, citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357, at 601 (1969). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, "due to the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.' " " *Id.* at 1965, 1966. As the Fifth Circuit has held, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Rios v. City of Del Rio*, 444 F.3d 417, 420–21 (5th Cir.2006).

■■■ The existence of an ascertainable class of persons to be represented by the proposed class of representatives is an implied prerequisite of FRCP 23. Where it is facially apparent from the pleadings that there is no ascertainable class a district court may dismiss the class allegation on the pleadings. *John v. National Security Fire and Casualty Company*, 501 F.3d 443 (5th Cir. 2007) *citing DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970).

### A. State Law Class Actions.

■■■ A district court must conduct a "rigorous analysis of the Rule 23 prerequisites before certifying a class." *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). The decision to certify is within the ***broad discretion*** of the court. The party seeking Rule 23 certification bears the burden of proof. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996). A district court may also look beyond the pleadings and such is necessary, so that the court can understand the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of the certification issues. *Castano*, 84 F.3d at 744.

■■■ Plaintiffs must prove in addition to the requirements FRCP 23(a), at least one of

---

3. In addition to the collection action, the third Amended Complaint requests: (1) a class action on behalf of California workers alone for unpaid overtime wages; Rec. Doc. 104 at ¶¶ 86–91; (2) a class action on behalf of California workers alone for failure to pay wages promptly; Rec. Doc. 104 at ¶¶ 92–96; (3) a class action on behalf of California workers alone for failure to provide meal breaks; Rec. Doc. 104 at ¶¶ 97–100; (4) a class action on behalf of California workers alone for unfair trade practices; Rec. Doc. 104 at ¶¶ 101–08; (5) a class action on behalf of Illinois workers alone for unpaid overtime wages; Rec. Doc. 104 at ¶¶ 109–14; (6) a class action on behalf of Illinois workers alone for failure to pay wages promptly. Rec. Doc. 104 at ¶¶ 115–18; (7) a class action on behalf of Pennsylvania workers alone for unpaid overtime wages; Rec. Doc. 104 at ¶¶ 119–26;(8) a class action on behalf of Pennsylvania workers alone for failure to pay wages promptly; Rec. Doc. 104 at ¶¶ 127–30; (9) a class action on behalf of Louisiana workers alone for failure to pay wages promptly. Rec. Doc. 104 at ¶¶ 131–34; and (10) a class action on behalf of Ohio workers alone for unpaid overtime wages. Rec. Doc. 104 at ¶¶ 135–40.

the requirements of FRCP 23(b).[4] *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Plaintiffs' Opposition alleges that they meet the requirement of FRCP (b)(2) and (b)(3)requirements.[5]

### i. FRCP 23(b)(2)

■ The Fifth Circuit has addressed what monetary relief is permissible in a(b)(2) class action and takes an intermediate approach, neither allowing certification without regard to the monetary remedies being sought, nor restricting certification to classes seeking exclusively injunctive or declaratory relief. *Allison v. Citgo Petroleum Corp.* 151 F.3d 402, 411 (5th Cir.1998) *citing, Johnson v. General Motors Corp.*, 598 F.2d 432, 437 (5th Cir. 1979). Accordingly, the Fifth Circuit takes the position, that monetary relief may be obtained in a(b)(2) class action so long as the *predominant* relief sought is injunctive or declaratory. *Allison*, 151 F.3d at 411 citing, *Jenkins*, 400 F.2d at 34, n. 14. (emphasis added).

The (b)(2) class action was enacted to focus on cases where broad, class-wide injunctive or declaratory relief is necessary. *Allison*, 151 F.3d at 412 *citing, Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 n. 8 (11th Cir.1983). Because of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members. *Allison*, 151 F.3d at 413. (citations omitted). The underlying premise of the (b)(2) class-that its members suffer from a common injury properly addressed by class-wide relief-"begins to break down when the class seeks to recover back pay or other forms of monetary relief to be allocated based on individual injuries." *Eubanks v. Billington*, 110 F.3d 87, 95 (D.C.Cir. 1997). Thus, as claims for individually based

money damages begin to predominate, the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases, thereby making class certification under (b)(2) less appropriate. *Allison*, 151 F.3d at 413, *citing, Johnson v. General Motors Corp.*, 598 F.2d 432, 437–38 (5th Cir. 1979).

■ Monetary relief, as opposed to injunctive relief, "predominates" under Rule 23(b)(2) when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case. Because it automatically provides the right of notice and opt-out to individuals who do not want their monetary claims decided in a class action, Rule 23(b)(3), as opposed to Rule 23(b)(2) is the appropriate means of class certification when monetary relief is the predominant form of relief sought and the monetary interests of class members require enhanced procedural safeguards. *Allison*, 151 F.3d at 413. Actions for class-wide injunctive or declaratory relief are intended for (b)(2) certification precisely because they involve uniform group remedies. Such relief may often be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case. When it does, the relatively complex calculations typically required in class actions for money damages are unnecessary. For these reasons, the Fifth Circuit has found, that the proposed (b)(2) classes need not withstand a court's independent probe into the superiority of the class action over other available methods of adjudication or the degree to which common issues predominate over those

---

**4.** FRCP 23(a) requires: (1) numerosity of the purported class; (2) the existence of common factual or legal issues; (3) the typicality between the claims of the class representatives and those of the absent class members; and (4) the adequacy of the representatives to represent the class. FRCP 23(a).

**5.** Federal Rule of Civil Procedure (b)(2) provides:

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if: (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;

affecting only individual class members, as (b)(3) classes must. *Allison*, 151 F.3d at 414 (citations omitted).

■ Accordingly, monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. Incidental means damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. *Allison*, 151 F.3d at 415. Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions. *Allison*, 151 F.3d at 415.

■ The district courts, in the exercise of their discretion, are in the best position to assess whether a monetary remedy is sufficiently incidental to a claim for injunctive or declaratory relief to be appropriate in a(b)(2) class action. *Allison*, 151 F.3d at 416.

■ On this is Motion to Dismiss, the Court must review the Amended Complaint and accept as true all the claims and allegations raised therein and make a determination of whether there are any plausible grounds showing that complaint states any valid claim for relief as to the class action claims. *Bell Atlantic*, 127 S.Ct. at 1965. Taking each claim for monetary relief and applying the *Allison* analysis, the Court finds that the monetary damages will not and can not flow directly from a finding of liability on the plaintiffs' claims for class-wide injunctive and declaratory relief. Accordingly, because the monetary claims predominate, section (b)(2) class certification on the state class action claims is not now, nor ever, possible to permit class (b)(2) certification. The grounds asserted in the third Amended Complaint for class certification under each state's law are discussed hereafter.

Under California law, Plaintiffs, on behalf of themselves and all members of the California Class, assert that Belfor, as the employer: (1) failed to pay them overtime under California Wage Order No. 17 and California Labor Code §§ 510, 1994 (See Count II); (2) owe the named Plaintiffs, and all those similarly situated, thirty days back wages under California Labor Code § 203 because Belfor has "willfully" failed to pay for all hours worked; (3) owe the named Plaintiffs, and all those similarly situated, an extra hour or pay at the regular rate of compensation for each workday that proper meal periods were not provided under California Labor Code §§ 226.7 and 512 and California Wage Orders 17–2001, 9(b); and (4) violated California's Business and Professional Code Section 17200 by committing acts of unfair competition, wrongfully denying earned overtime wages entitling them to damages. On behalf of themselves and all members of the California Class, Plaintiffs seek (Under California Law) loss of earnings for overtime worked, thirty days back pay, prejudgment interest, costs, and attorneys' fees.

Under Illinois law, Plaintiffs and those similarly situated, allege Belfor failed to pay them overtime in violation of the Illinois Minimum Wage Act entitling them to their alleged unpaid wages, with interest, attorneys fees and costs because Belfor "willfully" failed to pay the wages in violation of 705 ILCS section 225/1. (Counts VI, VIII)

Under Pennsylvania law, the named Plaintiffs and all those similarly situated, seek their unpaid compensation plus costs, interest, attorneys fees, and where applicable liquidated damages because Belfor: (1) "willfully" failed to pay the wages in violation of 43 P.S. § 260.9a and 43 P.S. § 260.10; (2) had a policy and practice of failing to pay overtime to the named Plaintiffs and all those similarly

situated entitling these persons to overtime amounts for all hours worked over 40hrs per week at a rate of 1.5 times the regular pay in accordance with 43 Pa. Stat. § 333.104(c); (4) attorneys fees and costa under 43 Pa. Stat. § 333.113; and (5) damages in the amount of twice the respective unpaid wages earned in accordance with 43 Pa. Stat. § 333.113. (Counts VIII, IX)

Under Louisiana law, the Louisiana named Plaintiff and all those similarly situated, seek unpaid compensation, penalty wages, interest, cost and attorneys fees for Belfor's alleged "willful conduct" in not paying compensation under LSA–R.S. § 23:632.

Under Ohio law, the named Ohio Plaintiff and all those similarly situated assert that Belfor, as the employer, failed to pay overtime for hours worked entitling them to loss of earnings for the hours worked, interest, cost and attorneys fees under Ohio's Minimum Fair Wage Standards Act.

As to injunctive and declaratory relief on the state law claims, Plaintiffs request: (1) a declaratory judgment that the practices complained of are unlawful under appropriate state law; (2) appropriate equitable and injunctive relief to remedy Belfor's alleged violations of state law including an injunction enjoining Belfor from continuing its practices; and (3) such other injunctive and equitable relief the Court seems just and proper. *See* Rec. Doc. 104 at pp. 34–25. Monetary relief includes: (1) statutory penalties; (2) unpaid wages, (3) liquidated damages, and restitution; (3) pre and post judgment interest; (4) attorneys fees and (5) costs. Rec. Doc. 104 at pp. 4, 34–25.

If the Court were to grant the declaratory relief sought by Plaintiffs, the Plaintiffs and those similarly situated, would not automatically be awarded the damages they seek. Take for instance Plaintiffs claims under the California Wage Order and Labor Codes. *See* Counts II, III, IV. According to Plaintiffs, these provisions of California law require Belfor to pay overtime wages to nonexempt employees and pay for meal time not taken. If the Court declares that Belfor violated California law in its actions and enjoins them from acting in the same fashion further, that finding in and of itself would not automatically allow the Plaintiffs to recover money damages in the form of back pay and additional amounts listed in the statutes. The Plaintiffs would still have to show individualized proof of injury, i.e. that they worked the time they said they did and did not get paid. This is the same analysis that would have to take place for the alleged violations of Illinois, Pennsylvania, Louisiana and Ohio law, not too mention whichever states laws the Plaintiffs may be found to be applicable in the future as new similarly situated persons are identified. In sum, the Court would be required to make an individualized focus under each state's law as to each named plaintiff and member of the class to determine if the statute was violated by Belfor and the appropriate remedy. Additionally, the same holds true for Plaintiffs' claims for liquidated damages or punitive damages allowable under these statutes. Additionally, most of these states statutes require that the employer's violation in not paying compensation be "willful." *See* Count III *citing* Cal. Labor Code § 203 providing for "willful" conduct; Count VII *citing* 705 ILCS § 225/1 providing for "willful" conduct; Count IX *citing* 43 P.S. 260.9a and 43 P.S. 260.10 providing for "willful" conduct; and Count X citing LSA–R.S. 23:632 providing for "willful" conduct.

For the reasons stated herein, the Court Finds that the monetary remedies sought by the Plaintiffs are not incidental to the claims for injunctive or declaratory relief and predominates. The monetary damages do not flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. If a declaration is made stating that Belfor violated the respective state laws, the class members will not automatically be entitled to relief under the respective statutes. They would still have to demonstrate that they, individually, were harmed by, inter alia, working the hours and not being paid. As such, the recovery of monetary damages is not concomitant with class-wide injunctive or declaratory relief. Accordingly, monetary relief predominates and Defendant's Motion is **GRANTED** as to dismissal of the FRCP(b)(2) class action claims.

*ii. FRCP 23(b)(3)* [6]

FRCP 23(b)(3) provides that the action may be maintained if the prerequisites of (a) are satisfied and the issues of law or fact common to the members predominate over any questions affecting individual members. This is the predominance requirement and it more stringent than the commonality requirement. *O'Sullivan v. Countrywide Home Loans,* 319 F.3d 732, 738 (5th Cir. 2003). To make the predominance consideration, the court must examine the claims and defense at issue painstakingly and cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome. *Castano,* 84 F.3d at 744. A party seeking class certification under Rule 23(b)(3) must also demonstrate "both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Bell Atlantic Corp. v. AT&T Corp.* 339 F.3d 294, 301 (5th Cir.2003). Whether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case. *Castano,* 84 F.3d at 744. The (b)(3) class action was intended to dispose of all other cases in which a class action would be "convenient and desirable," including those involving large-scale, complex litigation for money damages. *Allison,* 151 F.3d at 412 *citing, Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997); *see also Penson v. Terminal Transp. Co.,* 634 F.2d 989, 993 (5th Cir.1981) (citing Fed.R.Civ.P. 23 (advisory committee notes)).

In *Allison,* the Fifth Circuit refused to certify the class because the plaintiffs were "spread across two facilities, represented by six different unions, working in seven different departments, and alleging discrimination over a period of nearly twenty years." 151 F.3d at 419. Here, the state law class claims span over four states and involve numerous job sites. In *Basco v. Wal–Mart Stores, Inc.,* 216 F.Supp.2d 592, 602–603 (E.D.La. 2002.), Judge Duval denied certification in employment context because of the individualized issues at various work sites. In *Basco,* the plaintiffs sought to represent a class of Wal–Mart workers in claims of breach of contract, working off the clock, and other employment-related misconduct. The Court rejected the plaintiffs' assertions that common issues would predominate because, regarding the breach of contract claims, each plaintiff would have to establish the existence of a contract, the terms of it, and a breach. *Basco,* 216 F.Supp.2d at 602–03. Regarding the claims of working off the clock, the Court also rejected the request for class certification because of the many individualized factual issues that are present in any particular worker's circumstances on a given day. *Id.*

Belfor is correct that the class allegations fail to meet 23(b)(3)'s predominance requirement. The question as to whether Belfor, the general contractor, was the actual employer of each of the individual class members and current named plaintiffs is such an individualized inquiry and predominates over any common fact issues. Plaintiffs' argument that liability for the entire class will be established based upon a finding of an employment relationship between Belfor and the members of the class is a misstatement. The Court will first have to look at the individual relationship of each worker with Belfor prior to determining if Belfor has any liability. That analysis will require an em-

---

**6.** FRCP 23(b)(3) provides:

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

ployee/employer test under the applicable state law. After that finding is made, and assuming it finds Belfor is the employer, the Court would then have to look at each state statute and compare that statute with the facts as to each individual plaintiff to determine if a violation occurred. This would engage the Court in looking at each job site in each state for each class member for each day and hour worked. Assuming that determination could be made for each class member, the Court would then, applying the applicable state statute, determine individually whether that particular class member is entitled to damages in addition to the back pay. The nuances in each respective state's law requires an individualized analysis as to each class member. The Third Amended Complaint also states that many (but not all) of the potential class members were unfamiliar with the federal laws and the laws of each sate in which they were employed. Consequently, individual analysis will have to be performed of those class members to determine their knowledge.

The Court rejects Plaintiffs' argument that because Belfor uses a standard operating agreement in all states (assuming that fact as true) that this fact shows Belfor is the employer. The Master Service Agreement, assuming there is one in every state and that it is the same, is just one of many factors that will go into the employer analysis. Nevertheless, even if the Court assumes the employer relationship, while taking one step out of the analysis, does not take away from the specific individual focus that will need to be done in this case as to the class members individual claims if the action is certified.

 Further, when a class is seeking monetary damages, plaintiffs are required to provide a class wide formula for the award of damages. *Bell Atlantic,* 339 F.3d at 306 (stating that the lack of suitable formula for calculation of damages may defeat predominance). Class treatment may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation. *Id.* at 307. *Accord, Steering Comm. v. Exxon Mobil Corp.* 461 F.3d 598 (5th Cir.2006)(finding that the damages calculation cannot not be subject to any sort of

formulaic calculation and instead, turned on the individual plaintiffs suffering from different alleged periods and magnitudes of exposure and suffered different symptoms as a result.) Assuming that Belfor is the employer and that it was found to have violated the applicable state law, the Court would then, applying the applicable state statute, determine individually whether that particular class member is entitled to damages in addition to the back pay. The nuances in each respective state's law requires an individualized analysis as to each class member on this damages issue and is not now nor can it ever be formulaic. For instance, the entitlement to overtime wages in Illinois and Pennsylvania is predicated on average weekly earnings by the workers meeting a certain threshold. 34 Pa.Code § 231.82(6); 820 Ill. Comp. Stat. § 105/4a. The California meal break claims rely on the number of hours each worker worked in a given day, the periods of rest given to the worker on that particular job, and whether the worker waived his right to the breaks. Cal. Labor Code § 512. The claims for penalties, liquidated damages, or attorneys fees on certain claims are premised on individualized demands by the plaintiffs on their employers (or on Belfor) for the amounts owed. 705 Ill. Comp. Stat. § 225/1; 820 Ill. Comp. Stat. § 105/12; 43 Pa. Stat. § 260.10; 41 Ohio Rev.Code Ann. § 4111.10; Cal Labor Code §§ 1194 & 1197.1. Finally, the liquidated and punitive damages claims must depend on an individualized analysis to comport with the Constitutional protections espoused in *BMW v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Such an individualized analysis, the Fifth Circuit has held, precludes class certification of a claim seeking punitive damages. *Allison,* 151 F.3d at 417–18.

For the reasons stated herein, the Motion to Dismiss is **GRANTED** as to the dismissal of Plaintiffs' FRCP 23(b)(3) state class action claims.

### B. FLSA Claims.

 The basis for Belfor's challenge of the claims raised under the FLSA is that the Third Amended Complaint is conclusory as to the employment relationship between Bel-

for and the named plaintiffs and the similarly situated class members. Belfor takes issue with the following allegations:

Plaintiffs are ... former and current employees of the Defendant who were directly or indirectly employed by Defendant (paragraph 17);

Defendant employed Plaintiffs within the meaning of [various statutes] (paragraph 30; see also 31 and 32)

Defendant was an employer or joint employer of the Plaintiffs (paragraph 35);

Defendant has employed and continues to employ, 'employee[s],' including named Plaintiffs ... (paragraph 77).

Belfor urges these allegations are legal conclusions and do not show factual support for an employment relationship between the named Plaintiffs and potential class member plaintiffs and Belfor. Belfor asserts that the complaint does not show the "control factors" necessary to state an employee/employer relationship namely, "commonality of hiring, firing, discipline, pay, insurance, records, and supervision."

The FLSA section relied upon by the Plaintiffs states:

29 U.S.C. § 216(b) Damages; right of action; attorney's fees and costs; termination of right of action

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Employer is defined in the Act at 29 USC § 203 as:

(d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

Plaintiffs allege Defendant employed them and that they performed unskilled manual labor either directly or indirectly through subcontractors for Belfor on various projects in the states provided as well as in other states throughout the United States. Plaintiffs allege they were eligible for overtime under the FLSA and did not receive the same. Assuming all facts as true, these allegation state a cause of action under the FLSA. even under the more stringent "plausible grounds" standard of *Bell Atlantic*. Belfor's arguments and facts supporting the same, while appropriate for a summary judgment, do not allow this Court to grant the Motion to Dismiss. There are a number of considerations for the Court to consider in the employer relationship which are better reserved for a Motion for Summary Judgment; thus, the Motion to Dismiss the FLSA claims is denied.

**C. The Collective Action, Individual Actions, and Status Forward.**

This Order dismisses the request for class action status under the various state laws. Thus, Belfor's Motion to Dismiss these Claims on the merits, Rec. Doc. 114, is **Moot**. However, the parties have not addressed nor briefed whether the Amended Complaint states sufficient causes of action by the individual defendants for the respective state law violations. Further, in reviewing the Amended Complaints, the Court notes that the allegations are vague and inadequate with regard to such individual actions. While the Court believes amendment of the Complaint will have to take place, it also believes that such should not occur prior to a decision on whether the Court will or will not certify this action as a nationwide collective action under the FLSA. If the Court decides not to collectively certify this action, then the jurisdictional basis over the individual state law causes of action by each Plaintiff will have to be explored as well as whether the individual claims should proceed as one action or be separated. If the Court were to collectively certify this action as a nationwide collective action under the FLSA, the Court will have to consider and hear the parties arguments regarding whether or not the Court should entertain supplemental jurisdiction over the individual state law causes of action.

Thus, the Court orders that the parties set the Motion to Collectively Certify this action for hearing within the next thirty days. While the Motion to Conditionally Certify is pending, the Motion to Transfer and the Motion to Sever set in April 2008 are continued to be re-set after the Motion for Collective Action is decided. Further, after the Motion for Collective Action is heard and decided, the Court will then advise the parties concerning any the need for any additional briefing and Plaintiffs' amendment of its Complaint.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Rec.Doc. 113) is GRANTED in part and **DENIED** in part. The Motion is **GRANTED** as to the state law class action claims and these claims are dismissed with prejudice. The Motion is **DENIED** as to the FLSA claims.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Certain Claims (Rec.Doc. 114) is **DENIED as MOOT.**

**IT IS FURTHER ORDERED** that the parties set the pending Motion for Conditional Certification for hearing within the next thirty (30) days.

**IT IS FURTHER ORDERED** that Motion to Transfer (Rec.Doc. 229) and Motion to Sever (Rec.Doc. 230) are continued to be re-set after the hearing on the Motion for Collective Class Certification.

### *ORDER AND REASONS ON RECONSIDERATION*

JAY C. ZAINEY, District Judge.

Before the Court is Plaintiffs' Motion For Reconsideration requesting this Court reconsider its March 31, 2008, Order granting Belfor Group USA's Motion to Dismiss. Rec. Doc. 243. Defendant filed an Opposition to the Motion. Rec. Doc. 248. The matter came for hearing without oral argument on April 30, 2008, and was submitted on the briefs. The Court, having considered the arguments of the parties, the record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

## I. BACKGROUND

Belfor USA Group, Inc. ("Belfor") is a restoration and reconstruction company that specializes in emergency response. Following Hurricanes Katrina and Rita in 2005, Belfor was retained to perform its services in Louisiana, Mississippi, and Texas. Belfor undertook some 500 projects and utilized hundreds of subcontractors.

In February 2006, the Xavier matter (Civil Action 06–491) was filed alleging that workers on the Belfor job sites post-hurricanes Katrina and Rita were not paid overtime wages in violation of the Fair Labor Standards Act ("FLSA"). That action was certified as a collective action for settlement purposes only. A second group of plaintiffs filed the Obando matter (Civil Action 06–7804). That original action was a collective action filed by Orestos Daniel Obando and Adan Gonzales, on behalf of themselves and workers on Belfor job sites along the gulf coast and in New Orleans post-Katrina, who were allegedly not paid overtime wages. The Obando Plaintiffs amended the original Complaint and requested that the collective action extend nationwide. The Amended Complaint also added four new plaintiffs claiming denial of overtime in their respective states.

Thereafter, Plaintiffs, after leave was granted, filed a Third Amended Complaint. That Complaint added new plaintiffs claiming violations of Pennsylvania's wage and labor laws and violations of Ohio's wage and labor laws. These Second and Third Amended Complaints requested class certification.

Belfor filed a Motion to Dismiss pursuant to FRCP 12(b)(6) requesting that the class certification claims be dismissed. Rec. Doc. 240. This Court granted the Motion to Dismiss. Plaintiffs filed the instant Motion for Reconsideration arguing that the Court disregarded the Fifth Circuit standard of adjudicating Rule 12(b)(6) motions in the class action context by not discussing whether Plaintiffs adequately pled an ascertainable class. Rec. Doc. 243. Defendant argue that Plaintiffs fail to meet the standard under FRCP 59(e); that Plaintiffs misconstrue the Court's Order; that the Court properly dismissed the state law claims under Rule 12(b)(6); and that the Court's Order correct-

ly found that certification is not possible. Rec. Doc. 248.

## II. LAW AND ANALYSIS

 The Federal Rules of Civil Procedure provide that any party may file a motion to alter or amend a judgment within ten business days after its entry. FRCP 59(e). Under Rule 59, a district court enjoys considerable discretion in granting or denying such a motion. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990); *First Commonwealth Corp., v. Hibernia Nat. Bank of New Orleans,* 891 F.Supp. 290 (E.D.La.1995), amended 896 F.Supp. 634, aff'd 85 F.3d 622. A Court may grant a Rule 59 motion for reconsideration or to alter or amend the judgment when: (1) an intervening change in the controlling law has occurred, (2) evidence not previously available becomes available, or (3) it is necessary to correct a clear error of law or to prevent manifest injustice. *Crappell v. Boh Bros. Constr. Co., LLC,* 2006 WL 3772229, at *2, 2006 U.S. Dist. LEXIS 91961, at *5 (E.D.La.2006). Reconsideration is an "extraordinary remedy which should be used sparingly and should not be used to relitigate old matters, raise new arguments, or present evidence that could have been raised prior to the entry of judgment." *LaFargue v. Jefferson Parish,* 2000 WL 174899, *1 (E.D.La. 2000).

Plaintiffs make the same arguments in their Motion for Reconsideration as they did in their Opposition to Defendant's Motion to Dismiss. The Court, on its first review, rejected those arguments, and has not been provided any reason to reconsider those same claims currently. Moreover, Plaintiffs have not met the standard for FRCP 59 reconsideration because: (1) they fail to show that an intervening change in the controlling law has occurred; (2) they fail to produce evidence that was not previously available; and (3) they fail to show a clear error of law that must be corrected or that a manifest injustice will result. Accordingly, Plaintiffs' Motion for Reconsideration is **DENIED.**

For the reasons stated herein,

**IT IS ORDERED** that Plaintiffs' Motion for Reconsideration, Rec. Doc. 243, is **DENIED.**